Richard D. Rochford
Joseph Lawlor
HAYNES AND BOONE, LLP
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(T) 212-659-4984
(F) 212-884-9572
richard.rochford@haynesboone.com



14 CV 4050

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DOV SEIDMAN and LRN CORPORATION, | CIV NO. |
| Plaintiffs, | |
| V. | Jury Trial Requested |
| CHOBANI, LLC and DROGA5, LLC, | **COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF** |
| Defendants. | |

Plaintiffs Dov Seidman ("Seidman") and LRN Corporation ("LRN") (collectively "Plaintiffs") allege as follows against Defendants Chobani LLC ("Chobani") and Droga5 LLC ("Droga5"), upon actual knowledge with respect to themselves and their own acts, and upon information and belief as to all other matters:

### Nature of the Action

1.      This is a civil action for trademark and service mark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1051, *et seq.* and/or New York statutory and common law.

2.      Plaintiffs, whose business is based on promoting ethical corporate behavior, own federal trademark registrations for the word and mark HOW and have also developed common law rights in HOW and other HOW-based marks over a period of years. Plaintiffs' HOW marks convey a clear and consistent meaning: that *how* an organization behaves *matters*.

3.      Defendants were fully aware of Plaintiffs' HOW marks and their connotation prior to launching their infringing brand platform.  In late 2013, Droga5– the advertising agency hired by Chobani to prepare and launch a new corporate identity and branding campaign for Chobani – discussed Plaintiffs' marks and message during a meeting.

4.      Then, on January 29, 2014, Chobani sent this Twitter message to Mr. Seidman:



**Chobani (@Chobani)**

1/29/14, 4:36 PM
@DovSeidman Thanks for inspiring the world to care about "how." Can you help inspire the food industry, too? thunderclap.it/howmatters

5.      The very next day, Defendants launched Chobani's new branding platform – which employs "HOW" in precisely the same manner as Plaintiffs employ their HOW marks: as a *noun* connoting responsible and ethical corporate behaviors.  The new branding campaign launched by Chobani, and developed by Droga5, "focus[es]" on Chobani's socially and environmentally responsible practices, in the hope that shining a light on those aspects of Chobani's operations would appeal to consumers and also inspire other food manufacturers to improve their practices." Letter of Chobani's counsel, Julia Huston, Esq., dated May 13, 2014.  "Chobani's campaign was designed to encourage people to think about how food manufacturers treat their people and support the community at large." Id.

6.      Chobani's January 30, 2014 launch featured extensive social media and other branding and promotional activity attempting to promote ethical corporate behavior through heavy emphasis on the word and mark "HOW" and the HOW-derivative "How Matters", culminating in television ads first aired during the Super Bowl on February 2, 2014, and during the 2014 Winter Olympics and 2014 Academy Awards.

7.     With full knowledge of Plaintiffs' HOW marks, and Plaintiffs' established rights in these marks, Defendants willfully have infringed these marks, as detailed below.  Further, Defendants' infringing branding platform intentionally copies the precise meaning and message Plaintiffs' HOW marks convey to the public: that "*how matters.*"

## The Parties

8.     Mr. Seidman is an individual residing and working in New York, New York, and is the Chief Executive Officer of LRN Corporation.

9.     LRN is a Delaware corporation with a principal place of business at 745 Fifth Avenue, Suite 800, New York, New York 10151.

10.    Chobani is a Delaware corporation with "hometowns of South Edmeston, Twin Falls and New York City." (*See* http://www.chobani.com/foundation, last visited April 30, 2014.)

11.    Droga5, LLC is a Delaware corporation with a principal place of business at 120 Wall Street, New York, New York 10005.

## Jurisdiction and Venue

12.    This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338 (a) and (b).  The Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367(a) because they are substantially related to their federal claims and arise out of the same case or controversy.

13.    Venue lies in this District pursuant to 28 U.S.C. § 1391 (b) and (c) because the Defendants reside and regularly conduct business in this District, a substantial part of the events giving rise to Plaintiffs' claims have occurred and are continuing to occur in this District, and Plaintiffs' trademarks at issue are located in this District.

## Facts Relevant to the Claims for Relief

14.     Dov Seidman has been recognized by TIME as a "Game Changer," one of the "innovators and problem-solvers that are inspiring change in America." http://content.time.com/time/specials/packages/article/0,28804,2091589_2092033_2101686,00.html. Mr. Seidman holds bachelor's and master's degrees in moral philosophy from UCLA, and a BA with honors in philosophy, politics and economics from Oxford University. He is also a graduate of Harvard Law School.

15.     Mr. Seidman is the author of the acclaimed book *HOW: Why How We Do Anything Means Everything*. First published in 2007, *HOW* is a New York Times and Wall Street Journal Bestseller. The following print advertisement was used to promote and advertise *HOW*:



16.     The expanded edition of *How* was published in 2011, and features a foreword by President Bill Clinton:



"My friend Dov Seidman has dedicated his life's work to studying how people conduct their businesses and lives" writes President Clinton.  Referring to Mr. Seidman's "complete philosophy of the *how*," President Clinton states:  "[t]he individuals, organizations, and businesses that understand that *how* we choose to do things matters more than ever before will flourish."  While Mr. Seidman's influential book has also been published in many countries and languages, the English language HOW mark is employed globally, as these examples demonstrate:








17.    Mr. Seidman founded LRN in 1994. Over the past twenty years, LRN has helped more than 700 companies around the globe – and millions of their employees – translate their corporate values into concrete behaviors and practices that create advantage and economic value. LRN is the exclusive corporate sponsor of the Elie Wiesel Foundation for Humanity's Prize in Ethics.

18.    As Fortune Magazine observes about LRN, "Dov Seidman has built a highly successful business" based on advising companies to "'outbehave' their competitors ethically," through always behaving in a way that demonstrates that *how* matters. Richard McGill Murphy, *Why doing good is good for business*, FORTUNE, February 8, 2010.

19.    Mr. Seidman and his licensee LRN hold federal trademark registrations 4,210,276 and 4,388,331 for HOW. Those registrations cover, among other things, "business and professional conduct by business organizations," "corporate and social values," "institutional behavior and culture," "corporate culture and business, cultural, social and environmental responsibility," "values-driven business and values-based business leadership," and "the management and operation of business in an environmentally responsible and environmentally sustainable manner." Copies of those registrations are attached hereto as Exhibit A.

20.     Mr. Seidman and LRN also hold six pending trademark applications for HOW-based marks, including HOW IS THE ANSWER, THE HOW REPORT, HOW METRICS and additional HOW marks.  A chart describing those applications is attached hereto as Exhibit B.

21.     The HOW marks, and their message that ethical and sustainable organizational behavior matters, incorporate the Plaintiffs' comprehensive, public emphasis on using "HOW" as a noun rather than the typical use of that word as an adverb.  Plaintiffs' HOW marks are integral to LRN's business and marketing, and to how LRN connects and engages with its customers, prospects, and other stakeholders, in the United States and globally.

22.     Mr. Seidman and LRN use the HOW marks in a wide array of business activities, in the U.S. and internationally, including: speeches, articles, newsletters, training programs, educational courses, workshops, website materials, and consulting services; as well as in promotional articles such as pins, T-shirts, bags, and bookmarks, which are widely disseminated at conferences and speaking engagements.









23.     Consumers of those products and services, here and abroad, include corporate leaders and company employees in many diverse industries; government leaders and employees; military leaders, and servicemen and women; leaders and executives in entertainment, sports, marketing, and advertising; students, faculty and administrators in educational institutions; philanthropic and other nonprofit organizations; NGOs; and the general consuming public.

24.     Plaintiffs' global publication, THE HOW REPORT, organizes more than two million individual observations of behavior using Plaintiffs' analytical assessment tool, HOW METRICS.



25.     Howistheanswer.com, Plaintiffs' primary online resource, features extensive uses of Plaintiffs' HOW marks.



8

26.     Plaintiffs maintain a strong and continuous social media presence through the use

of the HOW marks, including a Facebook community.



27.     Mr. Seidman and LRN regularly use the HOW marks and, explicitly, "How

Matters," in their publications, presentations, website materials, training and educational courses

(including lessons, titled "Why HOW Matters," incorporated within widely-viewed LRN

courses), consulting services, and workshops.  Here are some examples:

 

The Executives' Club of Chicago
New Leaders Development Program
HOW Matters: The Key to Unleashing Competitive Advantage and Differentiation
Dov Seidman, Author, How: Why HOW We Do Anything Means Everything
Founder, Chairman and CEO of LRN Corporation
September 27, 2012 * 5:00 pm to 7:00 pm

# Forbes

## HOW Matters More Than Ever

 **Dov Seidman**, Contributor 10/10/2011



28.     Plaintiffs have spent substantial resources in connection with the HOW marks, which have received widespread third-party and media attention and have been seen by consumers throughout the United States and the world.

29.     Plaintiffs and the HOW marks have been featured in prominent and popular publications and media outlets, including Good Morning America, All Things Considered (on National Public Radio), The Charlie Rose Show, The New York Times, The Wall Street Journal, Business Week, and Forbes Magazine (which features Mr. Seidman's regular contributions under the title, "The HOW Column").

30.     Plaintiffs have given presentations featuring the HOW marks and message at leading conferences and events such as the World Economic Forum, the Clinton Global Initiative, Conscious Capitalism, the United Nations Global Compact Leaders Summit, The Economist's Human Potential Summit, the General Counsel Summit and, the Arthur Page Society, as well as in meetings with leaders and executives at some of the world's leading corporations.

31.     The clear connotation of Plaintiffs' HOW marks - that "How Matters" – is recognized by the public. Consequently, many leaders, public figures, educators, commentators, media hosts, reviewers and others highlight that meaning when referring to the works, products, and services of Mr. Seidman and LRN.



11









32.     In his October 15, 2008 New York Times column "*Why How Matters*", Thomas

L. Friedman captures the message conveyed to consumers through use of the HOW marks on all

of Seidman's and LRN's products and services: for businesses, institutions, and individuals,

"Seidman basically argues…how you do things matters more than ever."

33.     Mr. Friedman has featured Seidman's and LRN's HOW marks and message in numerous New York Times columns, and as Rule #8 in his seminal book *The World is Flat.* "Seidman's essential argument [states that] [y]ou will differentiate your company from the others by *how* you do business." *The World is Flat*, at 467-68.

34.     Seidman and LRN regularly and consistently repeat the meaning conveyed by the HOW marks to the consuming public, as well as the encompassing ethos of organizational and individual behavior those marks represent.  For example, *see* Dov Seidman, *How Matters More Than Ever*, FORBES, October 10, 2011: "the leaders, organizations and individuals best equipped to navigate today's new conditions consistently get one key idea right: it is no longer what we do that matters most.  It is HOW we do it."

35.     As illustrated by the foregoing examples, and as Defendants are fully aware, Mr. Seidman and LRN have created and developed very substantial goodwill and reputation – and built a significant and growing business – based on the HOW marks and the message conveyed to consumers through Plaintiffs' use of those marks.

36.     The HOW marks have become succinct symbols of LRN's and Seidman's products, services, values and philosophy.  Indeed, the HOW marks and message are integral to Plaintiffs' business activities and embody the ethos at the center of Mr. Seidman's life's work.

37.     Defendants knew of Plaintiffs' HOW marks and message months before they introduced their infringing advertising campaign and brand platform.  Defendants had actual or constructive knowledge of Plaintiffs' federal trademark registrations, as well as Plaintiffs' six additional federal trademark applications relating to Plaintiffs' HOW marks.

38.     Also, Mr. Seidman and the HOW marks and message were discussed at a Droga5 meeting held in late 2013.  At that meeting, the Droga5 attendees discussed whether or not

Droga5 and Chobani should reach out to Mr. Seidman.  Neither Defendant contacted Mr.

Seidman at that time.

     39.     Instead, on January 29, 2014, on the eve of launching its infringing brand

platform through a widely-televised Super Bowl ad, social media messages, and other branding

and promotional activity, Chobani sent the following message to Mr. Seidman via Twitter:



     40.     Chobani's message to Mr. Seidman confirms Chobani's prior knowledge of

Plaintiffs' HOW marks, and its recognition that the HOW marks and message have been

uniquely associated with Mr. Seidman.

     41.     Within a day of sending its message to Mr. Seidman, Chobani proceeded with the

introduction of its infringing branding campaign and platform, focusing on HOW:



14

https://www.facebook.com/Chobani, last visited April 30, 2014.  Since that date, Chobani has

pursued an aggressive, continuous multimedia campaign infringing Plaintiffs' HOW marks.

42.     Indeed, as Chobani's Chief Marketing Officer has publicly stated, the purpose of

Chobani's infringing brand platform is to "celebrate, lean in, leverage, our 'how.'"  (Peter

McGuiness, The Economist's Big Rethink, 2014).  "There are very few 'how' brands out there,"

adds Mr. McGuiness, "because the how isn't always pretty.  And in our case, we could celebrate

it and leverage it against our competitors." Id.

43.     Droga5 – as a means of attracting more marketing and advertising business – is

aggressively touting the infringing "How Matters" campaign it sold to Chobani:  "Chobani Gets

Real on Hollywood's Biggest Night: Taking 'How Matters' to the Oscars,"

https://www.droga5.com/news (last visited June 1, 2014).

44.     Defendants' infringing branding platform extends its unlawful use of the HOW

marks far beyond selling yogurt products.  Chobani concedes that its brand campaign "focuses

on Chobani's socially and environmentally responsible practices, in the hope that shining a light

on those aspects of Chobani's operations would appeal to consumers and also inspire other food

manufacturers to improve their practices."  Letter of Chobani's counsel, Julia Huston, Esq., dated

May 13, 2014.

45.     Thus, just as Plaintiffs' HOW marks promote ethical corporate practices and

convey the value and importance of ethical and socially responsible behavior, Chobani's

infringing brand platform uses HOW to convey the identical points:









46.     As used by both Plaintiffs and Defendants, the word "matters" serves simply to emphasize, or highlight, the dominant word and concept, "How."

47.     And just as Plaintiffs have done, Chobani seeks public endorsement of, and involvement in, its purported HOW corporate philosophy, as the following representative examples demonstrate:





https://www.facebook.com/Chobani, last visited April 30, 2014.

48.    Notably, Chobani's "join us" request appropriates a central message associated

with Plaintiffs and their HOW marks, in almost verbatim terms:



*'How' is not just a question.*

*how*

IS THE ANSWER.

"Our world is being dramatically reshaped. The rules of
the past no longer apply. In the 21st century, it's no longer
what you do that matters most but how you do it."

http://www.howistheanswer.com, last visited April 30, 2014.

49.     Plaintiffs immediately raised concerns regarding Chobani's infringing brand

platform, prompting a February 8, 2014 email message to Mr. Seidman from Andrew Essex,

Vice Chairman at Droga5.  Referring to Chobani's January 29, 2014 Twitter message to Mr.

Seidman, Mr. Essex states "I wish our team had reached out in a more thoughtful fashion, prior

to [the new campaign's] release [.]"  Mr. Essex further states that any similarities between the

Chobani campaign and Mr. Seidman's work are "purely coincidental."

50.     On March 11, 2014, Plaintiffs met with Whitney Radia, Account Lead on the

Chobani business at Droga5, and Droga5's General Manager, Susie Nam.  Ms. Nam and Ms.

Radia stated that Mr. Seidman's *HOW* book had been an inspiration for the Chobani campaign

(thereby indicating that similarities were far from coincidental).  The Droga5 representatives

further stated that, with respect to Plaintiffs, Droga5 and Chobani should have acted differently.

Notably, Droga5 admitted at the March 11 meeting that Chobani's extensive HOW-related

trademark use and potential trademark registration of  "How Matters" would lead to instances

where Plaintiffs – despite prior use and established rights – could not successfully use their

HOW marks.

51.     Plaintiffs also diligently sought to meet with Chobani over a period of months, beginning in February 2014.  With respect to that proposed meeting, Droga5 observed: "[u]rgency, necessity and opportunity is not lost on the team."  David Droga email message, April 4, 2014.  Nonetheless, although a meeting between representatives of Plaintiffs and Chobani was finally scheduled for April 21, 2014, that meeting was cancelled by Chobani.

52.     Based on their belief that companies that espouse ethical behavior and transparency should attempt to resolve disputes through meeting with each other, Plaintiffs made additional meeting requests to Chobani on April 25, May 2, May 19, May 20, and May 28. Those requests were also rebuffed.

53.     Notwithstanding the evidence and admissions that they knew of Plaintiffs' HOW marks and message, Defendants are falsely representing that they independently created a unique mark, message and philosophy.  Discussing Chobani's "social brand", Chobani's Chief Marketing Officer, Peter McGuinness, falsely claims:  "It also helps to wrap it in an idea that's unique to [Chobani], which is that 'How Matters.'"  *Lean back CMOment: Branding, yogurt and bears*, THE ECONOMIST GROUP (Feb. 10, 2014), available at http://www.economistgroup.com/ leanback/consumers/cmoment-chobani-cmo-peter-mcguinness/.

54.     Droga5 falsely claims that the infringing brand platform "honestly, came out of just conversations with [Chobani]."  David Droga, *The Big Rethink 2014 US - The 360° CMO 2014*, THE ECONOMIST (March 13, 2014), http://youtu.be/jYLdypqB6Rk.  Mr. Droga continues: "we built something around 'how matters'.  How a product is made matters, how you treat your employees matters, how you source your ingredients matters.  [Chobani] wants to turn it into a conversation..."

55. That "conversation" includes various HOW-related branding messages combined with statements asserting Chobani's aspirations and beliefs, such as the following:



https://www.facebook.com/Chobani, last visited April 30, 2014.

56. Here, despite the prominent use and widespread public recognition of Mr. Seidman's and LRN's HOW marks, and Defendants' conceded prior knowledge of those facts, Defendants have not chosen what's right. Instead, Defendants willfully and intentionally appropriated Plaintiffs' marks and have continued to use them to convey precisely the same meaning conveyed by Plaintiffs' HOW marks. Chobani is using those marks to distinguish itself as a company by how it does business and by making claims about "how [it] behave[s], consume[s], build[s] trust in [its] relationships, and relate[s] to others." Dov Seidman, *HOW Matters More Than Ever*, FORBES, October 10, 2011.

57.     Defendants' infringing brand platform has caused and will continue to cause consumers to improperly believe that Plaintiffs are associated or affiliated with Defendants or that Plaintiffs have licensed, sponsored, or endorsed Chobani's products and practices and/or the infringing brand platform.

58.     Defendants' infringing brand platform is also likely to lead significant numbers of consumers to improperly believe that Plaintiffs are infringing Chobani marks and misappropriating Chobani's messages.  That likelihood of reverse confusion – which has already been recognized by Droga5 (see ¶49) – would be devastating to Plaintiffs' hard-earned reputations for ethical behavior.  Indeed, such reverse confusion would severely jeopardize LRN's business and Mr. Seidman's career, both of which are founded on the principles conveyed by the HOW marks: that "HOW" you conduct yourself in life, and in business, "matters."

### First Claim for Relief: Violations of
### Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)

59.     Plaintiffs repeat the allegations contained in paragraphs 1 through 58 above.

60.     As detailed above, without Plaintiffs' consent, Chobani used and continues to use in commerce reproductions, counterfeits, copies, and colorable imitations of Plaintiffs' registered HOW marks in connection with the sale, offering for sale, distribution, and/or advertising of goods and/or services on or in connection with which such use is likely to cause confusion, and/or to cause mistake, and/or to deceive in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

61.     By reason of the foregoing, Plaintiffs have suffered, and will continue to suffer, substantial damages.

**Second Claim for Relief: Contributory Trademark Infringement**

62.     Plaintiffs repeat the allegations contained in paragraphs 1 through 61 above.

63.     Droga5, with intent to induce Chobani to infringe Plaintiffs' HOW marks, and/or with knowledge that Chobani was infringing Plaintiffs' HOW marks, provided Chobani with the ideas and marketing materials that constitute and became Chobani's infringing conduct.

64.     By reason of the foregoing, Plaintiffs have and continue to suffer substantial damages.

**Third Claim for Relief: Violations of**
**Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)**

65.     Plaintiffs repeat the allegations contained in paragraphs 1 through 64 above.

66.     As detailed above, Defendants' actions are likely to cause confusion, mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiffs, and as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by Plaintiffs.

67.     As detailed above, Defendants' actions in commercial advertising and promotion, misrepresent the nature, characteristics, and qualities of Defendants' goods, services, or commercial activities.

68.     As detailed above, Defendants have misappropriated Plaintiffs' HOW marks, and the associated good will, which were created at the Plaintiffs' expense, and through Plaintiffs' skill and labor.

69.     By reason of the foregoing, Plaintiffs have suffered, and will continue to suffer substantial damages.

**Fourth Claim for Relief: Trademark Infringement Under N.Y. G.B.L. § 360-K**

70.     Plaintiffs repeat the allegations contained in paragraphs 1 through 69 above.

71.     Defendants used, without Plaintiffs' consent, a reproduction, counterfeit,  copy, or colorable imitation of the HOW marks in connection with the sale, distribution, offering for sale, and advertising of goods and services on or in connection with which such use was and is likely to cause confusion or mistake or to deceive as to the source of origin of such goods and services.

72.     Defendants reproduced, counterfeited, copied, and colorably imitated the HOW marks and applied such reproduction, counterfeit, copy or colorable imitation to labels, signs, prints, packages, wrappers, receptacles, and/or advertisements intended to be used upon or in connection with the sale or other distribution in New York of such goods and services.

73.     Defendants' infringing actions were committed with the intent to cause confusion, mistake, and/or to deceive.

74.     By reason of the foregoing, Plaintiffs have suffered, and will and continue to suffer, substantial damages and Defendants have reaped substantial profits.

**Fifth Claim for Relief: Injury to Business**
**Reputation and Dilution Under N.Y. G.B.L. § 360-L**

75.     Plaintiffs repeat the allegations contained in paragraphs 1 through 74 above.

76.     As described above, Defendants' use of the HOW marks creates a likelihood of injury to Plaintiffs' business reputations, and of dilution of the distinctive quality of the HOW marks.

77.     Defendants' use of the HOW marks will cause both confusion and reverse confusion as to Plaintiffs' and Defendants' associations with the marks.

78.     The Defendants' use of the HOW marks in conjunction with the same meaning given to those marks by Plaintiffs places Defendants in direct competition with Plaintiffs in the market to promote the message and meaning of HOW – even though Defendants, through, *inter*

*alia*, their infringing activity, are presenting an inferior product by failing to adhere to the HOW ethos.

79.     By reason of the foregoing, Plaintiffs have suffered, and will continue to suffer, substantial damages, and are suffering, and will continue to suffer, irreparable harm as a result of Defendants' unlawful use of the HOW marks.

### Sixth Claim for Relief: Violations of N.Y. G.B.L. § 133

80.     Plaintiffs repeat the allegations contained in paragraphs 1 through 79 above.

81.     Defendants, with intent to deceive or mislead the public, have assumed, adopted, and/or used as, or as part of, Defendants' corporate, assumed, and/or trade name, for advertising purposes, for the purposes of trade, and/or for some other purpose, the HOW marks, which deceive and/or mislead the public as to the identity of Defendants and/or as to the connection of Defendants with Plaintiffs.

82.     By reason of the foregoing, Plaintiffs have suffered, and will continue to suffer, substantial damages, and are suffering, and will continue to suffer, irreparable harm as a result of Defendants' use of the HOW marks.

### Seventh Claim for Relief: Deceptive Trade Practices Under N.Y. G.B.L. § 350

83.     Plaintiffs repeat the allegations contained in paragraphs 1 through 82 above.

84.     Defendants' advertising, including Chobani's labeling of its goods with the HOW marks and Droga5's association of the HOW marks with its marketing services, is misleading in a material respect, in that, *inter alia*, that HOW marks are associated with Plaintiffs.

85.     By  reason of the foregoing, Plaintiffs have suffered, and will continue to suffer substantial damages.

### Eighth Claim for Relief: Unfair Competition/Misappropriation

86.     Plaintiffs repeat the allegations contained in paragraphs 1 through 85 above.

87.     As discussed above, Chobani's use of Plaintiffs' HOW marks constitutes "palming off" the sale of their goods and services as if they are those of Plaintiffs.

88.     Defendants have, in bad faith, misappropriated the HOW marks by taking and using the HOW marks, which were created through the expense, skill, and labor of Plaintiffs.

89.     The Defendants' use of the HOW marks in conjunction with the same meaning given to those marks by Plaintiffs places Defendants in direct competition with Plaintiffs in the market to promote the message and meaning of HOW.

90.     By these actions, Defendants have gained a financial benefit for themselves and have caused financial loss and damages to Plaintiffs.

**WHEREFORE,** Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants, as follows:

(A)     Issue injunctive  relief enjoining Defendants and their officers, directors, agents, employees, successors, assigns and attorneys, and all other persons or entities in active concert or participation with Defendants who receive notice of the injunction by personal service or otherwise, from doing, aiding, causing or abetting the following:

(i)     engaging in any further use of marks that are identical or confusingly similar to the HOW marks;

(ii)     directly or indirectly using in commerce an identical or confusingly similar imitation of the HOW marks in connection with the sale, offering for sale, distribution, promotion, or advertisement of any goods and/or services without authorization from Plaintiffs;

(iii)    using a mark that is identical or confusingly similar to Plaintiffs' HOW marks in commercial advertising or promotion, and thus misrepresenting the nature, characteristics, qualities, and/or geographic origin of Defendants' products and services; and

(iv)    otherwise engaging in competition unfairly.

(B)    Order Defendants to file with the Court and serve upon counsel for Plaintiffs, within thirty (30) days after the entry of the permanent injunction requested in this Complaint, a written report, sworn to under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

(C)    Order Defendants to account for and pay to Plaintiffs all profits derived by reason of Defendants' acts alleged in this Complaint pursuant to 15 U.S.C. § 1117(a), N.Y. G.B.L. § 360-M, and New York State common law;

(D)    Order Defendants to pay Plaintiffs all actual damages they have sustained as a result of Defendants' actions including, without limitation, damage to its business, reputation and goodwill, and the loss of sales and profits that they would have made but for Defendants' acts pursuant to 15 U.S.C. § 1117(a), N.Y. G.B.L. § 360-M, and New York State common law;

(E)    Find that this is an "exceptional" case pursuant to 15 U.S.C. § 1117(a);

(F)    Award Plaintiffs treble damages pursuant to 15 U.S.C. § 1117(b) and N.Y. G.B.L. § 360-M;

(G)    Award Plaintiffs their costs of suit, including reasonable and necessary attorneys' fees and expenses for the prosecution and appeal, if any, of this matter pursuant to 15 U.S.C. § 1117(a) and N.Y. G.B.L. § 360-M;

(H)    Order Defendants to destroy any goods or marketing materials bearing Plaintiffs' HOW marks in the possession or under the control of either Defendant;

(I)    Order Defendants to engage in corrective advertising, at their expense, at a scope commensurate with their advertising and promotion of the infringing marks;

(J)    Award Plaintiffs pre-judgment and post-judgment interest on all sums awarded in the Court's judgment; and

(K)    Grant Plaintiffs such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all claims and issues triable by a jury.

Dated:   June **4**, 2014

HAYNES AND BOONE, LLP
*Attorneys for Plaintiffs*

By: _RD Rochford_

Richard D. Rochford
Joseph Lawlor
Haynes and Boone, LLP
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(T) 212-659-4984
(F) 212-884-9572
richard.rochford@haynesboone.com

Of Counsel:
Jeffrey Becker
2323 Victory Avenue
Suite 700
Dallas, Texas 75219

# EXHIBIT A

# United States of America

## United States Patent and Trademark Office

# HOW

**Reg. No. 4,210,276**

**Registered Sep. 18, 2012**

**Int. Cls.: 16 and 41**

**TRADEMARK**

**SERVICE MARK**

**PRINCIPAL REGISTER**

SEIDMAN, DOV (UNITED STATES INDIVIDUAL)
SUITE 700
1100 GLENDON AVENUE
LOS ANGELES, CA 90024

FOR: PUBLICATIONS, NAMELY, HAND-OUTS IN THE FIELDS OF LAW, ETHICS, BUSINESS REGULATORY COMPLIANCE, LEGAL COMPLIANCE, BUSINESS CONDUCT AND GOVERNANCE; PRINTED CORRESPONDENCE COURSE MATERIALS IN THE FIELD OF LAW, ETHICS, BUSINESS REGULATORY COMPLIANCE, LEGAL COMPLIANCE, BUSINESS CONDUCT AND GOVERNANCE; COURSE MATERIALS IN THE FIELDS OF LAW, ETHICS, BUSINESS REGULATORY COMPLIANCE, LEGAL COMPLIANCE, BUSINESS CONDUCT AND GOVERNANCE, IN CLASS 16 (U.S. CLS. 2, 5, 22, 23, 29, 37, 38 AND 50).

FIRST USE 9-29-2011; IN COMMERCE 9-29-2011.

FOR: EDUCATIONAL SERVICES, NAMELY, CONDUCTING CLASSES, SEMINARS, CONFERENCES AND WORKSHOPS IN THE FIELDS OF LAW, ETHICS, BUSINESS REGULATORY COMPLIANCE, LEGAL COMPLIANCE, BUSINESS CONDUCT AND GOVERNANCE AND DISTRIBUTION OF COURSE MATERIAL IN CONNECTION THEREWITH; PROVIDING ON-LINE TRAINING COURSES, SEMINARS, WORKSHOPS IN THE FIELDS OF LAW, ETHICS, BUSINESS REGULATORY COMPLIANCE, LEGAL COMPLIANCE, BUSINESS CONDUCT AND GOVERNANCE, IN CLASS 41 (U.S. CLS. 100, 101 AND 107).

FIRST USE 9-21-2011; IN COMMERCE 9-21-2011.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

SN 77-470,734, FILED 5-9-2008.

TEJBIR SINGH, EXAMINING ATTORNEY



Director of the United States Patent and Trademark Office

---

### REQUIREMENTS TO MAINTAIN YOUR FEDERAL
### TRADEMARK REGISTRATION

### WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
### DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.

---

**Requirements in the First Ten Years***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  *See* 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

> *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

---

**The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or reminder of these filing requirements.**

---

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are based on the U.S. registration date (not the international registration date).  The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. *See* 15 U.S.C. §1141j.  For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at http://www.uspto.gov.**

# United States of America

## United States Patent and Trademark Office

# HOW

**Reg. No. 4,388,331**

**Registered Aug. 20, 2013**

**Int. Cls.: 16, 35, 41, and 45**

**TRADEMARK**

**SERVICE MARK**

**PRINCIPAL REGISTER**



*Lisa Stewart Lee*

Acting Director of the United States Patent and Trademark Office

SEIDMAN, DOV (UNITED STATES INDIVIDUAL)
1100 GLENDON AVENUE, SUITE 700
LOS ANGELES, CA 90024

FOR: PUBLICATIONS, NAMELY, HAND-OUTS, CHARTS, ARTICLES AND NEWSLETTERS IN THE FIELDS OF BUSINESS COMMUNICATIONS, BUSINESS AND PROFESSIONAL CONDUCT BY BUSINESSES, INSTITUTIONS, AND GOVERNMENT AGENCIES, LEADERSHIP, CORPORATE AND SOCIAL VALUES, INSTITUTIONAL BEHAVIOR AND CULTURE, CORPORATE GOVERNANCE, VALUES-DRIVEN AND VALUES-BASED BUSINESS LEADERSHIP, INSPIRATIONAL LEADERSHIP, ETHICAL LEADERSHIP, ENVIRONMENTAL INNOVATION, ORGANIZATIONAL DEVELOPMENT, CORPORATE CULTURE AND BUSINESS, CULTURAL, SOCIAL AND ENVIRONMENTAL RESPONSIBILITY, ENTERPRISE AND ENVIRONMENTAL SUSTAINABILITY; ALL OF THE AFOREMENTIONED GOODS FOR USE BY BUSINESS EXECUTIVES, GOVERNMENT OFFICIALS, AND ORGANIZATION LEADERS INTERESTED IN ETHICS AND CORPORATE RESPONSIBILITY, IN CLASS 16 (U.S. CLS. 2, 5, 22, 23, 29, 37, 38 AND 50).

FIRST USE 9-29-2011; IN COMMERCE 9-29-2011.

FOR: COMMUNICATIONS, BUSINESS AND PROFESSIONAL CONDUCT BY BUSINESSES, INSTITUTIONS, AND GOVERNMENT AGENCIES, GOVERNANCE AND LEADERSHIP, CORPORATE AND SOCIAL VALUES, INSTITUTIONAL BEHAVIOR AND CULTURE, CORPORATE GOVERNANCE, VALUES-DRIVEN BUSINESS AND VALUES-BASED BUSINESS LEADERSHIP, INSPIRATIONAL LEADERSHIP, ETHICAL LEADERSHIP, ORGANIZATIONAL DEVELOPMENT, CORPORATE CULTURE, BUSINESS CULTURAL AND SOCIAL RESPONSIBILITY, AND THE MANAGEMENT AND OPERATION OF BUSINESS IN AN ENVIRONMENTALLY RESPONSIBLE AND ENVIRONMENTALLY SUSTAINABLE MANNER; PROVIDING A WEBSITE FEATURING NEWS THAT RELATES TO AND IMPACTS BUSINESS IN THE FIELDS OF BUSINESS ETHICS, BUSINESS AND PROFESSIONAL CONDUCT BY BUSINESSES, INSTITUTIONS, AND GOVERNMENT AGENCIES, LEADERSHIP, CORPORATE AND SOCIAL VALUES, INSTITUTIONAL BEHAVIOR AND CULTURE, CORPORATE GOVERNANCE, VALUES-DRIVEN AND VALUES-BASED BUSINESS LEADERSHIP, INSPIRATIONAL LEADERSHIP, ETHICAL LEADERSHIP, ORGANIZATIONAL DEVELOPMENT, CORPORATE CULTURE AND BUSINESS CULTURAL AND SOCIAL RESPONSIBILITY, AND THE MANAGEMENT AND OPERATION OF BUSINESS IN AN ENVIRONMENTALLY RESPONSIBLE AND ENVIRONMENTALLY SUSTAINABLE MANNER; ALL OF THE AFOREMENTIONED SERVICES FOR USE BY BUSINESS EXECUTIVES,

**Reg. No. 4,388,331** GOVERNMENT OFFICIALS, AND ORGANIZATION LEADERS INTERESTED IN ETHICS AND CORPORATE RESPONSIBILITY, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 9-29-2011; IN COMMERCE 9-29-2011.

FOR: EDUCATIONAL SERVICES, NAMELY, PROVIDING ONLINE CLASSES AND PRESENTATIONS IN THE FIELDS OF BUSINESS COMMUNICATIONS, BUSINESS AND PROFESSIONAL CONDUCT BY BUSINESSES, INSTITUTIONS, AND GOVERNMENT AGENCIES, LEADERSHIP, CORPORATE AND SOCIAL VALUES, INSTITUTIONAL BEHAVIOR AND CULTURE, CORPORATE GOVERNANCE, VALUES-DRIVEN AND VALUES-BASED BUSINESS LEADERSHIP, INSPIRATIONAL LEADERSHIP, ETHICAL LEADERSHIP, ENVIRONMENTAL INNOVATION, ORGANIZATIONAL DEVELOPMENT, CORPORATE CULTURE AND BUSINESS, CULTURAL, SOCIAL AND ENVIRONMENTAL RESPONSIBILITY, ENTERPRISE AND ENVIRONMENTAL SUSTAINABILITY; EDUCATIONAL SERVICES, NAMELY, CLASSES AND PRESENTATIONS IN THE FIELDS OF LAW, ETHICS, BUSINESS COMMUNICATIONS, BUSINESS AND PROFESSIONAL CONDUCT BY BUSINESSES, INSTITUTIONS, AND GOVERNMENT AGENCIES, LEADERSHIP, CORPORATE AND SOCIAL VALUES, INSTITUTIONAL BEHAVIOR AND CULTURE, CORPORATE GOVERNANCE, VALUES-DRIVEN AND VALUES-BASED BUSINESS LEADERSHIP, INSPIRATIONAL LEADERSHIP, ETHICAL LEADERSHIP, ENVIRONMENTAL INNOVATION, ORGANIZATIONAL DEVELOPMENT, CORPORATE CULTURE AND BUSINESS, CULTURAL, SOCIAL AND ENVIRONMENTAL RESPONSIBILITY, ENTERPRISE AND ENVIRONMENTAL SUSTAINABILITY; PROVIDING LEARNING FORUMS IN THE FIELDS OF LAW, ETHICS, BUSINESS COMMUNICATIONS, BUSINESS AND PROFESSIONAL CONDUCT BY BUSINESSES, INSTITUTIONS, AND GOVERNMENT AGENCIES, LEADERSHIP, CORPORATE AND SOCIAL VALUES, INSTITUTIONAL BEHAVIOR AND CULTURE, CORPORATE GOVERNANCE, VALUES-DRIVEN AND VALUES-BASED BUSINESS LEADERSHIP, INSPIRATIONAL LEADERSHIP, ETHICAL LEADERSHIP, ENVIRONMENTAL INNOVATION, ORGANIZATIONAL DEVELOPMENT, CORPORATE CULTURE AND BUSINESS, CULTURAL, SOCIAL AND ENVIRONMENTAL RESPONSIBILITY, ENTERPRISE AND ENVIRONMENTAL SUSTAINABILITY; PROVIDING AN ONLINE MONTHLY NEWSLETTER IN THE FIELDS OF LAW, ETHICS, BUSINESS COMMUNICATIONS, BUSINESS AND PROFESSIONAL CONDUCT BY BUSINESSES, INSTITUTIONS, AND GOVERNMENT AGENCIES, LEADERSHIP, CORPORATE AND SOCIAL VALUES, INSTITUTIONAL BEHAVIOR AND CULTURE, CORPORATE GOVERNANCE, VALUES-DRIVEN AND VALUES-BASED BUSINESS LEADERSHIP, INSPIRATIONAL LEADERSHIP, ETHICAL LEADERSHIP, ENVIRONMENTAL INNOVATION, ORGANIZATIONAL DEVELOPMENT, CORPORATE CULTURE AND BUSINESS, CULTURAL, SOCIAL AND ENVIRONMENTAL RESPONSIBILITY, ENTERPRISE AND ENVIRONMENTAL SUSTAINABILITY; ALL OF THE AFOREMENTIONED SERVICES FOR USE BY BUSINESS EXECUTIVES, GOVERNMENT OFFICIALS, AND ORGANIZATION LEADERS INTERESTED IN ETHICS AND CORPORATE RESPONSIBILITY, IN CLASS 41 (U.S. CLS. 100, 101 AND 107).

FIRST USE 9-29-2011; IN COMMERCE 9-29-2011.

FOR: PROVIDING ONLINE INFORMATION IN THE FIELDS OF LAW, LEGAL ETHICS, BUSINESS REGULATORY COMPLIANCE, AND LEGAL COMPLIANCE, IN CLASS 45 (U.S. CLS. 100 AND 101).

FIRST USE 9-29-2011; IN COMMERCE 9-29-2011.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

SN 77-705,755, FILED 4-2-2009.

LINDA POWELL, EXAMINING ATTORNEY

---

### REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION

### WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.

---

**Requirements in the First Ten Years***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

> *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.* *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

---

**The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or reminder of these filing requirements.**

---

***ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:** Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at http://www.uspto.gov.

# EXHIBIT B

## EXHIBIT B

### Plaintiffs' Pending Federal Trademark Applications

| Mark | App. No. | App. Date | Products/Services |
|------|----------|-----------|-------------------|
| HOW IS THE ANSWER | 85558020 | 3/1/2012 | Electronic downloadable publications, namely, books, newsletters hand-outs, workbooks, legal memoranda, executive training manuals, charts, research papers, white papers, articles, best practice guides, and handbooks in the fields of business communications, business and professional conduct by businesses, institutions, and government agencies, leadership, corporate and social values, institutional behavior and culture, corporate governance, environmental innovation, organizational development, corporate culture and business, cultural, social and environmental responsibility, enterprise and environmental sustainability. (Class 9) |
| | | | Publications, namely, books, newsletters, hand-outs, workbooks, legal memoranda, executive training manuals, charts, research papers, white papers, articles, best practice guides, and handbooks in the fields of business communications, business and professional conduct by businesses, institutions, and government agencies, leadership, corporate and social values, institutional behavior and culture, corporate governance, environmental innovation, organizational development, corporate culture and business, cultural, social and environmental responsibility, enterprise and environmental sustainability; Printed matter, namely, a periodical focusing on the fields of law, ethics, business communications, business and professional conduct by businesses, institutions, and government agencies, leadership, corporate and social values, institutional behavior and culture, corporate governance, environmental innovation, organizational development, corporate culture and business, cultural, social and environmental responsibility, enterprise and environmental sustainability. (Class 16) |
| | | | Consulting and advisory services in the fields of business ethics, business communications, business and professional conduct by businesses, institutions, and government agencies, business administration and management, business leadership development, corporate and social values, institutional behavior and culture, corporate governance, environmental innovation, organizational development, corporate culture and business cultural and social responsibility; Business |

consulting services, namely, providing advice and assistance in the management and operation of business in an environmentally responsible and environmentally sustainable manner; Business consulting services, namely, providing assistance in development of business strategies and creative ideation; Providing online information in the fields of business ethics, business communications, business and professional conduct by businesses, institutions, and government agencies, governance and leadership, corporate and social values, institutional behavior and culture, corporate governance, organizational development, corporate culture, business cultural and social responsibility, and the management and operation of business in an environmentally responsible and environmentally sustainable manner; Providing a website featuring news that relates to and impacts business in the fields of business ethics, business and professional conduct by businesses, institutions, and government agencies, leadership, corporate and social values, institutional behavior and culture, corporate governance, organizational development, corporate culture and business cultural and social responsibility, and the management and operation of business in an environmentally responsible and environmentally sustainable manner. (Class 35)

Educational services, namely, providing online information, classes, tutorials and presentations in the fields of business communications, business and professional conduct by businesses, institutions, and government agencies, leadership, corporate and social values, institutional behavior and culture, corporate governance, environmental innovation, organizational development, corporate culture and business, cultural, social and environmental responsibility, enterprise and environmental sustainability; Educational services, namely, classes, tutorials and presentations in the fields of law, ethics, business communications, business and professional conduct by businesses, institutions, and government agencies, leadership, corporate and social values, institutional behavior and culture, corporate governance, environmental innovation, organizational development, corporate culture and business, cultural, social and environmental responsibility, enterprise and environmental sustainability; Providing group coaching and learning forums in the fields of law, ethics, business

| | | | communications, business and professional conduct by businesses, institutions, and government agencies, leadership, corporate and social values, institutional behavior and culture, corporate governance, environmental innovation, organizational development, corporate culture and business, cultural, social and environmental responsibility, enterprise and environmental sustainability; Educational and entertainment services, namely, providing speaking services in the fields of business communications, business and professional conduct by businesses, institutions, and government agencies, leadership, corporate and social values, institutional behavior and culture, corporate governance, environmental innovation, organizational development, corporate culture and business, cultural, social and environmental responsibility, enterprise and environmental sustainability. Providing an online newsletter in the fields of law, ethics, business communications, business and professional conduct by businesses, institutions, and government agencies, leadership, corporate and social values, institutional behavior and culture, corporate governance, environmental innovation, organizational development, corporate culture and business, cultural, social and environmental responsibility, enterprise and environmental sustainability.  (Class 41) |
|---|---|---|---|
| THE HOW REPORT | 85587158 | 4/2/2012 | Publications, namely, white papers in the field of business, namely, business ethics, corporate culture and organizational behavior, and their impact on business performance, namely, innovation, resiliency, efficiency, employee loyalty, customer satisfaction, misconduct, and financial performance.  (Class 16) |
| HOW METRICS | 85587159 | 4/2/2012 | Business analysis, assessment and review of business data, business information, organizational behavior, corporate culture and business leadership as they relate to business performance, namely, innovation, resiliency, efficiency, employee loyalty, customer satisfaction, misconduct, and financial performance.  (Class 35) |
| HOW | 85949621 | 6/3/2013 | Board games, card games and role-playing games in the fields of business communications, business and professional conduct by businesses, institutions, and government agencies, leadership, corporate and social values, institutional behavior and culture, corporate |

| | | | |
|---|---|---|---|
| | | | governance, values-driven and values-based business leadership, inspirational leadership, ethical leadership, environmental innovation, organizational development, corporate culture and business, cultural, social and environmental responsibility, enterprise and environmental sustainability.  (Class 28) |
| HOW | 85950205 | 6/4/2013 | Publications, namely, books, journals, reports, workbooks, training manuals, research papers, guides, and handbooks in the field of law, ethics, business communications, business and professional conduct by businesses, institutions, and government agencies, leadership, corporate and social values, institutional behavior and culture, corporate governance, values-driven and values-based business leadership, inspirational leadership, ethical leadership, environmental innovation, organizational development, corporate culture and business, cultural, social and environmental responsibility, enterprise and environmental sustainability; all of the aforementioned goods for use by business executives, employees, government officials, and organization leaders interested in ethics and corporate responsibility.  (Class 16)<br><br>Consulting and advisory services in the fields of business ethics, business oral and written communications, business and professional conduct by businesses, institutions, and government agencies, business administration and management, business leadership development, corporate and social values, institutional behavior and culture, corporate governance, values-driven and values-based business leadership, inspirational leadership, ethical leadership, organizational development, corporate culture and business cultural and social responsibility; Business consulting services, namely, providing advice and assistance in the management and operation of business in an environmentally responsible and environmentally sustainable manner; Business consulting services, namely, providing assistance in development of business strategies and creative ideation; all of the aforementioned services for use by business executives, employees, government officials, and organization leaders interested in ethics and corporate responsibility.  (Class 35)<br><br>Educational and entertainment services, namely, |

| | | | |
|---|---|---|---|
| | | | providing tutorials, group coaching and speaking services in the fields of business communications, business and professional conduct by businesses, institutions, and government agencies, leadership, corporate and social values, institutional behavior and culture, corporate governance, values-driven and values-based business leadership, inspirational leadership, ethical leadership, environmental innovation, organizational development, corporate culture and business, cultural, social and environmental responsibility, enterprise and environmental sustainability; Online board games, computer games, card games, role-playing games and non-dowloadable interactive games in the fields of law, ethics, business communications, business and professional conduct by businesses, institutions, and government agencies, business leadership, corporate and social values, institutional behavior and culture, corporate governance, values-driven and values-based business leadership, inspirational leadership, ethical leadership, environmental innovation, organizational development, corporate culture and business, cultural, social and environmental responsibility, enterprise and environmental sustainability; Entertainment services, namely, providing temporary use of non-downloadable interactive games; all of the aforementioned goods for use by business executives, employees, government officials, and organization leaders interested in ethics and corporate responsibility. (Class 41) |
| HOW | 85969205 | 6/25/2013 | Computer game software, interactive computer game programs and downloadable computer game programs; Educational and training software featuring instruction and information in the fields of law, ethics, business communications, business and professional conduct by businesses, institutions, and government agencies, leadership, corporate and social values, institutional behavior and culture, corporate governance, leadership, environmental innovation, organizational development, corporate culture and business, cultural, social and environmental responsibility, enterprise and environmental sustainability; Prerecorded DVDs featuring educational information in the fields of law, ethics, business communications, business and professional conduct by businesses, institutions, and government agencies, leadership, corporate and social values, institutional behavior and culture, corporate |

| | | | governance, leadership, environmental innovation, organizational development, corporate culture and business, cultural, social and environmental responsibility, enterprise and environmental sustainability; Downloadable webinars and publications, namely, books, presentation outlines, journals, charts, research papers, case studies, white papers, articles, newsletters, and handbooks in the fields of law, ethics, business communications, business and professional conduct by businesses, institutions, and government agencies, leadership, corporate and social values, institutional behavior and culture, corporate governance, leadership, environmental innovation, organizational development, corporate culture and business, cultural, social and environmental responsibility, enterprise and environmental sustainability.  (Class 9) |
|---|---|---|---|