# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

601 Lexington Avenue
New York, New York 10022

Claudia Ray
To Call Writer Directly:
(212) 446-4948
claudia.ray@kirkland.com

(212) 446-4800

www.kirkland.com

Facsimile:
(212) 446-4900

June 24, 2015

**VIA ECF & HAND DELIVERY**

Hon. Paul G. Gardephe
U. S. District Court, S.D.N.Y.
500 Pearl Street
New York, New York 10007

   Re: *Seidman et al. v. Chobani, LLC et al.*, Civ. No. 14-cv-4050 (PGG)

Dear Judge Gardephe:

  We represent Defendant Droga5, LLC ("Droga5") in this matter. We write pursuant to the Court's June 19, 2015, Order to request a pre-motion conference regarding Droga5's proposed motion for summary judgment dismissing the Complaint of Dov Seidman ("Seidman") and LRN Corp. (collectively, "Plaintiffs") in its entirety because the undisputed evidence shows that (1) Plaintiffs do not own any protectable trademarks, and (2) there is no likelihood of confusion between their purported marks for business consulting services on the one hand, and Chobani, LLC's ("Chobani") Greek Yogurt or Droga5's advertising services on the other hand.

**I. Plaintiffs' Trademark Infringement and Contributory Infringement Claims Fail.**

  To prevail, Plaintiffs must prove that (1) they own valid, protectable marks and (2) Defendants' alleged uses of those marks are likely to cause confusion. See <u>Gruner + Jahr v. Meredith Corp.</u>, 991 F.2d 1072, 1075 (2d Cir. 1993); see also <u>J.T. Colby & Co. v. Apple Inc.</u>, No. 11 Civ. 4060 (DLC), 2013 WL 1903883, at *5 (S.D.N.Y. May 8, 2013), <u>aff'd</u>, No. 13-2227-CV, 2014 WL 4799139 (2d Cir. Sept. 29, 2014). Plaintiffs cannot meet these requirements.

  **A. Plaintiffs' Purported Marks are Not Protectable.**

  Plaintiffs' purported "how"-formative marks are not protectable because they (1) are merely descriptive and (2) lack secondary meaning. See <u>Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.</u>, 973 F.2d 1033, 1041 (2d Cir. 1992).

    1. **Plaintiffs Use "How" to Describe Their Services.**

  A descriptive term "forthwith conveys an immediate idea of the . . . characteristics of the goods." <u>Abercrombie & Fitch Co. v. Hunting World, Inc.</u>, 537 F.2d 4, 11 (2d Cir. 1976) (citation omitted); see also <u>J.T. Colby</u>, 2013 WL 1903883, at *8 ("ibooks" descriptive of book

## KIRKLAND & ELLIS LLP

Hon. Paul G. Gardephe
June 24, 2015
Page 2

imprint where it "was intended . . . to refer to the Internet and promoted as such"). Descriptive terms are not protectable as marks. See J.T. Colby, 2013 WL 1903883, at *6. Here, Plaintiffs use "how" to describe their services and the concept they convey, i.e., "how" to conduct business and behave responsibly. Indeed, Plaintiffs most often use "how" as part of a larger phrase or sentence to describe their services. See, e.g., Ex. A (Screen Shots ("In the 21st century, it's no longer what you do that matters most but how you do it.")); see also Ex. B (Seidman Tr., 4/1/15), 86:15-20. Thus, the purported marks are merely descriptive. See J.T. Colby, 2013 WL 1903883, at *5.

### 2. Plaintiffs' Purported Marks Do Not Have Secondary Meaning.

Because Plaintiffs' alleged marks are merely descriptive, they are not protectable absent secondary meaning. See Bristol-Myers Squibb, 973 F.2d at 1040. Proof of secondary meaning "entails vigorous evidentiary requirements," see id. at 1041, which Plaintiffs cannot meet. Courts consider (1) consumer surveys; (2) "sales success;" (3) advertising expenditures; (4) unsolicited media coverage; (5) third party attempts to copy the mark; and (6) the length and exclusivity of the use. See Sports Traveler, Inc. v. Advance Magazine Publishers, Inc., 25 F. Supp. 2d 154, 164 (S.D.N.Y. 1998). None of these factors favors Plaintiffs.

First, Plaintiffs admittedly have no consumer surveys, see Ex. B (Seidman Tr., 4/1/15), 251:2-21, and even if they did, the other factors would still weigh against them. Second, there is no evidence of "sales success," [REDACTED]. See Ex. B (Seidman Tr., 4/1/15), 119:7-23; Ex. C (Dep. Ex. 368, at 2). Third, Plaintiffs have offered no evidence that they advertised their services using their purported marks. Fourth, their alleged marks received no unsolicited media coverage. Fifth, third parties have not tried to copy the purported marks. Sixth, Plaintiffs' use of the purported marks has been neither lengthy nor exclusive, as they only began using "how" in 2006. See Ex. B (Seidman Tr., 4/1/15), 166:18-167:21. Moreover, apparently seeking to create rights where none exist, in 2014—after Chobani began using HOW MATTERS—Plaintiffs admittedly undertook extensive efforts to add "how matters" to their blogs and Twitter account. See Ex. B (Seidman Tr., 4/2/15), 567:8-569:11. Furthermore, hundreds of third parties use "how" for educational services, business consulting services, publications, and related goods and services, both alone and in combination with other words. See Ex. D (examples of third party uses of "how"). Because Plaintiffs' purported marks are not protectable, for that reason alone their claims should fail, and Droga5's counterclaims should be granted. See J.T. Colby, 2013 WL 1903883, at *12; Sports Traveler, 25 F. Supp. 2d at 164.

### B. There is no Likelihood of Forward or Reverse Confusion.

Plaintiffs' claims also fail for the independent reason that consumers are not likely to be confused between Plaintiffs' use of "how" and other "how"-formative marks, on the one hand, and Chobani's HOW MATTERS mark for Greek Yogurt, or Droga5's advertising services, on the other hand. See Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961).

**KIRKLAND & ELLIS LLP**

Hon. Paul G. Gardephe
June 24, 2015
Page 3

 **Strength of Plaintiffs' Mark:** For the same reasons Plaintiffs' purported marks are not protectable, they are conceptually and commercially weak, and thus this factor favors Droga5.

 **Actual Confusion:** Plaintiffs have failed to show any actual confusion. Seidman admits he is not aware of any potential or current customer trying to purchase yogurt or advertising services from him or LRN, or any current or potential customers trying to purchase any of Plaintiffs' services from Chobani or Droga5. See Ex. B (Seidman Tr., 4/2/15), 476:22-477:9.[1] Thus, this factor favors Droga5. See Multi-Vet Ltd. v. Premier Pet Prods., Inc., No. 08 Civ. Civ. 3251 (LMM), 2008 WL 3914845, at *6 (S.D.N.Y. Aug. 22, 2008).

 **Degree of Similarity:** Plaintiffs' purported marks look and sound different than Chobani's HOW MATTERS mark, which uses an additional word that Plaintiffs' purported marks do not. Each mark is depicted in a different font and color, and Chobani's mark always appears with the famous CHOBANI house mark. See Ex. F (parties' marks); Ex. B (Seidman Tr., 4/2/15), 620:25-621:7; Ex. G (S. Ngu Tr., 5/21/15), 91:16-92:4. Because the marks are not similar, this factor favors Droga5. See J.T. Colby, 2013 WL 1903883, at *15 (differences "significant" where marks used with very different logos); SLY Magazine, LLC v. Weider Publ'ns., L.L.C., 529 F. Supp. 2d 425, 439 (S.D.N.Y. 2007) (summary judgment for defendant based on differences in font and addition of tagline); First Nat'l Bank, 2004 WL 1575396, at *9 (use of brand name with trademark can help dispel confusion); Brockmeyer v. Hearst Corp., 248 F. Supp. 2d 281, 296 (S.D.N.Y. 2003) (summary judgment for defendant where plaintiff's "O" for magazine always appeared as <<O>> whereas defendant's always appeared with "The Oprah Magazine"); Mejia & Assocs., Inc. v. Int'l Bus. Machs. Corp., 920 F. Supp. 540, 547 (S.D.N.Y. 1996) (EDUQUEST marks not similar where defendant also used "IBM" house mark).

 **Good Faith:**[2] There is no bad faith here given that the "How Matters" campaign was inspired by Chobani's commitment to using natural, locally-sourced ingredients to make its Greek Yogurt, as well as its commitment to supporting the communities in which it manufactures its products. See Ex. H (J. Bauer Tr., 6/5/15), 35:18-36:25 ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌); see also SLY, 529 F. Supp. 2d at 441. In addition, all of Droga5's witnesses confirmed that no one at Droga5 who worked on the campaign had any knowledge of Plaintiffs or their alleged trademarks prior to conceiving of "How Matters." To the extent Defendants learned of Mr. Seidman's book *after* conceiving the "How Matters" line, by third parties or otherwise, mere knowledge of a plaintiff's mark does not

---

[1] Nearly all of the parties Plaintiffs identified as having been confused are Plaintiffs' own employees, shareholders, relatives and/or personal friends, see Ex. E (Ltr. from J. Lawlor to D. Kluft, 3/12/15), and thus as a matter of law they cannot present evidence of their own alleged confusion. See Gameologist Grp., LLC v. Scientific Games Int'l, Inc., 838 F. Supp. 2d 141, 162-63 (S.D.N.Y. 2011).

[2] "[W]hether a party acted in bad faith is not of high relevance" because it does not relate directly to consumer confusion." First Nat'l Bank of Omaha, Inc. v. Mastercard Int'l Inc., 03 CIV. 707 (DLC), 2004 WL 1575396, at *12 (S.D.N.Y. July 15, 2004). Intent is even "less relevant" in the reverse confusion context, because "it is unlikely that a larger and better known junior user intends to trade on the reputation of the lesser-known plaintiff." See id. at *10.

# KIRKLAND & ELLIS LLP

Hon. Paul G. Gardephe
June 24, 2015
Page 4

amount to bad faith. See, e.g., J.T. Colby, 2013 WL 1903883, at *23 ("[A]ctual knowledge of another's prior registration of a very similar mark may be consistent with good faith."). That is especially the case where, as here, the products at issue are completely unrelated. Finally, there is no evidence that Defendants intended the "How Matters" tagline and campaign for Chobani's Greek Yogurt to take advantage of Plaintiffs' alleged reputation for business consulting services. In fact, Plaintiffs "ha[ve] no reputation or good will on which [Defendants] could attempt to trade," which "weighs heavily against an inference that [Defendants] acted in bad faith." Gameologist Grp., 838 F. Supp. 2d at 163; see also SLY, 529 F. Supp. 2d at 441. In sum, because Defendants acted in good faith, this factor also favors Droga5.

**Sophistication of Consumers:** Plaintiffs admit that purchasers of their ethics and compliance courses are large corporations and organizations, and the person making the purchasing decision is ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ See Ex. I (K. Brennan Tr., 4/16/15), 33:6-16. Plaintiffs also admit that their services cost anywhere from a few thousand dollars to millions of dollars per year, depending on the contract. See Ex. J (Response to Office Action, 12/21/09), at 2. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Ex. B (Seidman Tr., 4/2/15), 475:17-476:10. Thus, this factor favors Droga5.

**Quality of the Products:** Where, as here, goods are noncompeting, "it makes no difference whether the noncompetitive user's goods or services are of higher, equal or inferior quality." See 2 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 24:15 (4th ed.); see also N.Y. City Triathlon, LLC v. NYC Triathlon Club, Inc., 704 F. Supp. 2d 305, 340 (S.D.N.Y. 2010) (describing product quality as "one of the less probative factors").

**Proximity:** Plaintiffs use "how" to describe their business consulting services and related products that instruct organizations how to conduct business, whereas Chobani uses HOW MATTERS for Greek Yogurt. As Judge Pitman noted, comparing the two is "like trying to compare music and jello." Ex. K, Dkt. 32, Hearing Tr., 4/28/15, 19:10-11. Likewise, Droga5 creates consumer-facing ad campaigns, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. See Ex. B (Seidman Tr.), 796:10-797:13. In short, as Plaintiffs admit, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ See Ex. B (Seidman Tr., 4/2/15), 605:16-21; Ex. I (K. Brennan Tr., 4/16/15), 213:8-215:15. Thus, this factor favors Droga5.

**Bridging the Gap:** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. See Ex. B (Seidman Tr., 4/1/15), 558:15-18; Ex. I (Brennan Tr., 4/16/15), 214:9-215:15. This factor also favors Droga5.

**Weighing the Factors:** All of the relevant Polaroid factors favor Droga5, making summary judgment for Defendants appropriate on Plaintiffs' Lanham Act claims.[3]

---

[3] Because Plaintiffs' Lanham Act claims fail, their claims for contributory infringement, infringement under New York law, and unfair competition/misappropriation under New York law also fail. See, e.g., Novartis Pharms. Corp. v. Eon Labs Mfg., Inc., 363 F.3d 1306, 1308 (Fed. Cir. 2004); J.T. Colby, 2013 WL 1903883, at *26; Major League

**KIRKLAND & ELLIS LLP**

Hon. Paul G. Gardephe
June 24, 2015
Page 5

## II. Plaintiffs' Other Claims Also Fail as a Matter of Law.

### A. Injury to Business Reputation and Dilution Under New York Statutory Law.

For dilution under Section 360-L of the New York General Business Law ("GBL"), Plaintiffs must show "(1) that [they] possess[] a strong mark—one which has a distinctive quality or has acquired a secondary meaning . . . and (2) a likelihood of dilution by either blurring or tarnishment." Kaplan, Inc. v. Yun, No. 13 CIV. 1147 JGK, 2014 WL 1689040, at *8 (S.D.N.Y. Apr. 30, 2014). As discussed above, Plaintiffs' purported marks are not protectable, and there is no likelihood of dilution. See Bristol-Myers Squibb, 973 F.2d at 1049; Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC, 221 F. Supp. 2d 410, 422 (S.D.N.Y. 2002) (many factors relevant to confusion also are relevant to dilution). Also, Plaintiffs have failed to show any reputational harm due to the use of "How Matters." See, e.g., Ex. B (Seidman Tr., 4/2/15), 780:10-781:25. Plaintiffs' claim under Section 360-L therefore fails.

### B. Droga5 Has Not Used Plaintiffs' Name.

GBL Section 133 bars the use, "with intent to deceive or mislead the public, . . . for advertising purposes or for the purposes of trade, or for any other purpose, [of] any name . . . which may deceive or mislead the public" as to identity or affiliation. To establish this claim, Plaintiffs must show that Droga5 used their purported marks "as part of [Droga5's] 'corporate, assumed or trade name.'" U-Neek, Inc. v. Wal-Mart Stores, Inc., 147 F. Supp. 2d 158, 176 (S.D.N.Y. 2001). This claim fails as Droga5 has never used any of Plaintiffs' purported "how" or "how"-formative marks as part of its corporate name, nor have Plaintiffs claimed it has done so.

### C. Plaintiffs' State Law Claim for Deceptive Trade Practices Also Fails.

GBL Section 349 requires proof that (1) the challenged act was consumer-oriented, (2) it was misleading in a material way, and (3) the plaintiff suffered injury as a result of the deception. See Merck Eprova AG v. Brookstone Pharm., LLC, 920 F. Supp. 2d 404, 425 (S.D.N.Y. 2013). The dispositive question is whether the matter affects the public interest in New York. See Gucci Am., Inc. v. Duty Free Apparel, Ltd., 277 F. Supp. 2d 269, 273 (S.D.N.Y. 2003). Claims that arise out of a trademark infringement action reflect a public harm "too insubstantial to satisfy the pleading requirements of § 349." Id. As Plaintiffs' claim is based only on trademark infringement and consumer confusion, it also fails.

*   *   *

As Plaintiffs' marks are not protectable and there is no likelihood of confusion, and Plaintiffs' remaining claims under New York law fail as a matter of law, this Court should dismiss Plaintiffs' claims in their entirety and grant Droga5's counterclaims.

---

Baseball Props., Inc. v. Opening Day Prods., Inc., 385 F. Supp. 2d 256, 269 (S.D.N.Y. 2005); Diversified Mktg., Inc. v. Estee Lauder, Inc., 705 F. Supp. 128, 133 (S.D.N.Y. 1988). Likewise, because Plaintiffs' claims for infringement fail, Droga5 will prevail on its counterclaim for non-infringement.

## KIRKLAND & ELLIS LLP

Hon. Paul G. Gardephe
June 24, 2015
Page 6

                                            Respectfully submitted,

                                            Claudia Ray

cc:      All Counsel of Record